[Civ. No. 2262.    First Appellate District.—December 31, 1917.]

## ROBERT H. COUNTRYMAN, Respondent, v. CALIFORNIA TRONA COMPANY (a Corporation), Appellant.

CORPORATION LAW — LEGAL SERVICES — UNAUTHORIZED CONTRACT OF EMPLOYMENT—SUBSEQUENT RATIFICATION — CONFLICT OF EVIDENCE —APPEAL.—In an action for legal services rendered to a corporation, where the evidence is in substantial conflict as to whether the unauthorized contract of employment was made known to and approved by a majority of the directors, and as to whether with such knowledge and approval the plaintiff was permitted to proceed with the performance of the services so as to constitute a ratification of the contract, the finding in plaintiff's favor will not be disturbed on appeal.

ID.—RATIFICATION OF UNAUTHORIZED ACTS—SERVICES OF ATTORNEY.— The agreement of a corporation entered into by its manager without authority sufficiently ample to enable him to execute the same may be approved and ratified so as to become binding upon such corporation through the knowledge, consent, and approval of a majority of the membership of the board of directors acting individually and - informally, particularly where a person has been permitted to continue in the open and active capacity and service of an attorney for the corporation without objection or inquiry as to the existence or terms of his engagement so to do.

ATTORNEY AND CLIENT — CONTRACTS FOR COMPENSATION — RULE.—The rule that where the relation of attorney and client already exists when a contract is made concerning attorney's fees, the attorney is precluded from recovering more than a reasonable sum, without regard to the attempted fixation of the value of such services by the agreement, is not a rule of universal application, and only applies to those agreements where the circumstances under which they are·entered into disclose some special reason for the application of the rule, as where the written contract provides for greater compensation than was either expressly or impliedly agreed upon prior to the existence of the confidential relation, or where special relations of confidence exist, or where the client has no other independent legal adviser, or where there has been some failure on the part of the attorney to make full disclosure to the client as to the extent of the services required.

ID.—AMOUNT OF COMPENSATION—INSTRUCTION.—In an action for legal services, an instruction that if the jury found that there was a written contract fixing the amount of compensation, they need not consider whether such services were reasonably worth such amount, was not misleading, where the court gave every instruction requested by defendant and repeatedly instructed the jury that the

utmost limit of plaintiff's recovery was the reasonable value of his services.

ID.—DISCHARGE WITHOUT CAUSE—MEASURE OF COMPENSATION.—Where an attorney is discharged without cause before the full measure of his services has been performed, he is not required to allege or prove the reasonable value of the services which he was thus prevented from performing, but is entitled to count on his contract.

APPEAL from a judgment of the Superior Court of Alameda County, and from an order denying a new trial. T. W. Harris, Judge.

The facts are stated in the opinion of the court.

Charles W. Slack, Chauncey S. Goodrich, and Perry Evans, for Appellant.

Chapman & Trefethen, Wm. P. Hubbard, and R. H. Countryman, for Respondent.

RICHARDS, J.—This is an appeal from a judgment in favor of plaintiff for the sum of thirty-nine thousand dollars and costs, and from an order denying defendant's motion for a new trial.

The action was instituted for the recovery of the sum of forty thousand dollars, less the sum of one thousand dollars paid on account, alleged to be due from the defendant to the plaintiff as counsel fees. The complaint is in two counts, one upon an express contract for the payment of the above-named sum; the other a count for the recovery of said sum as the reasonable value of the plaintiff's professional services. The answer of the defendant denies the existence of any express contract for the employment of plaintiff to render any professional services whatever; and also denies that any such services which the plaintiff may have rendered to the defendant were of the reasonable value of forty thousand dollars or any other sum whatever, and alleged that for any services which the plaintiff may have rendered to the defendant he has been fully paid. The defendant also pleads the bar of the statute of limitations to the action.

The cause was tried before a jury demanded by the defendant. The trial before such jury occupied nine days, at the conclusion of which the jury unanimously rendered a verdict

in plaintiff's favor for the full sum demanded in his. complaint. The defendant moved for a new trial upon the grounds of insufficiency of the evidence to justify the verdict; that said verdict was against law, and also upon the ground of errors of law occurring at the trial and fully specified in the bill of exceptions. The entire record of the trial is before us, and is very voluminous.

The facts of the case, in so far as their recital may be necessary for its decision upon appeal, are as follows: The defendant is a mining corporation organized under the laws of the state of California, with a capitalization of one million dollars, and owning or claiming to own locations embracing forty-one thousand two hundred acres of mineral lands in the counties of San Bernardino and Inyo in said state, containing deposits of potash, soda, and trona of vast and variously estimated value. The corporation began its operations for the development of these properties in the year 1908, and in the month of August of that year entered into an agreement with the Foreign Mines Development Company, an English corporation, for the purpose of having provided the necessary capital for such development, giving its mortgage upon the properties to the latter corporation to secure such advances and expenditures as it might have, and also such bonuses as under the agreement it was entitled to receive. After the development work had proceeded for a little more than a year the mortgagee gave notice of its election to consider all moneys secured by said mortgage to be due and payable, and of its intention to proceed to a sale of the property under the terms of the mortgage. Thereupon the mortgagor, the appellant herein, commenced an action in the superior court of Alameda County to enjoin the proposed sale, and secured a temporary injunction to that effect, whereupon the defendant therein, the Foreign Mines Development Company, filed its answer and cross-complaint, praying for the foreclosure of its said mortgage, and also filed its application for the transfer of the cause to the federal courts. This transfer being accomplished, the suit was referred to the master in chancery to take testimony therein. In the meantime, and during the pendency of said action, the California Trona Company granted to one E. H. Merrill an option to purchase all of its said properties for the sum of one million dollars. At that time the plaintiff in this action was the attorney

for said E'. H. Merrill, while the defendant herein had been
theretofore and continued to be represented by one J. Har-
wood. The existence of the foregoing option in the said
Merrill, together with the various involvements of the defend-
ant herein accruing out of or coincident with its financial
and legal difficulties with its mortgagee, brought the said
E. H. Merrill and his counsel into the close relations of a
common interest with the defendant herein in an effort to
extricate the properties of the defendant from its several
imminent dangers of being lost to it. The plaintiff herein
and the counsel for the defendant herein were thus brought
into association for the protection of this common interest
of their clients, in the course of which the plaintiff co-oper-
ated with the defendant's counsel in the preparation of cer-
tain affidavits by the president and directors of said corpora-
tion for use in the course of their pending suit in the federal
court, and also participated in certain hearings therein.
About this time, also, some trouble seemed impending with
jumpers upon the property, in the course of which the plain-
tiff was called into consultation with Mr. Dolbeer, the gen-
eral manager and one of the directors of the defendant, and
performed some services in that connection and also in the
way of advising and preparing relocations of certain of the
defendant's claims. While these matters were impending
the plaintiff in the month of September, 1910, received a tele-
gram from Mr. Dolbeer requesting him to be formally asso-
ciated with Mr. Harwood in the pending action in the federal
court, and he thereafter appeared as representing the plain-
tiff (this defendant) therein, and also acted as its counsel in
the various other difficulties in which it either was or was
likely to become involved. In the month of December, 1910,
the defendant held a corporate meeting in the city of San
Francisco, at which its board of directors was filled out so as
to consist of directors Boyes, Dolbeer, Simon, Philips, and
Bartholomew, Dr. Boyes being elected president of the cor-
poration and Mr. Dolbeer vice-president and general man-
ager. A few days thereafter Mr. Dolbeer and Director
Philips visited the plaintiff's office in said city for the purpose
of making an agreement covering his compensation for his
past and future services, at which time the plaintiff said to
Dolbeer and Philips that his fee would be forty thousand dol-
lars for his past services and his future services in the fore-

closure suit. After some discussion a written contract was executed on behalf of the California Trona Company by said Dolbeer as its manager, which provides as follows:

"That for and in consideration of the legal services heretofore rendered by said Countryman to said California Trona Company, and for the legal services to be rendered by said Countryman as such attorney at law, in the suit pending before the United States Circuit Court in and for the Northern District of California to foreclose the mortgage of the Foreign Mines Development Company on the property of said California Trona Company in San Bernardino county, California, there shall be paid to said Countryman the sum of forty thousand ($40,000) dollars in full settlement and discharge and satisfaction of all of said legal services.

"In witness whereof the parties hereto have executed these presents the day and year herein first above written.

> "California Trona Company,
> "By C. E. Dolbeer, Mgr.
> "R. H. Countryman."

There is no evidence that Mr. Dolbeer was ever formally authorized by any resolution or other formal action of the board of directors of the defendant herein to enter into or execute this contract on its behalf, but there was evidence presented on the plaintiff's behalf tending to show that the subject and substance of this contract was made the subject of discussion and approval in various conversations between the plaintiff and a majority of the members of the defendant's board of directors, and was also discussed among themselves and with other persons. On January 17, 1911, at a general meeting of the stockholders and directors of the defendant a resolution was offered by Manager Dolbeer, and seconded by Director Bartholomew, providing for the borrowing of the sum of one thousand dollars from Colonel Merrill and the giving of the corporate note therefor. The said resolution, as appears from the minutes of said meeting, certified to by its secretary, contained the following words: "Said money is for the purpose of making a partial payment to Robert H. Countryman on account of his agreement for his legal services rendered to this company." . There is evidence both ways as to whether the above-quoted clause was a part of said resolution at the time of its adoption, and there is also much evidence *pro* and *con* with reference to the sev-

eral conversations with and among the directors of the corporation with reference to the existence and terms of the plaintiff's written agreement.   During the year 1911 the defendant was passing through a series of internal convulsions arising out of the efforts of contending factions among its stockholders to obtain control of it, the faction seeking to overthrow its existing board of directors being led by one Guy L. Wilkinson, who was counsel for the Foreign Mines Development Company in its litigation with the defendant. This faction at length succeeded in accomplishing its object in the month of May of that year, and after electing a board of directors to its liking, proceeded to notify the plaintiff herein and others who had been acting as counsel for the defendant that their services would be no longer required.   The respondent herein admits receiving such a notice on October 4, 1911.   This action was commenced on May 17, 1913.

As to the first contention of the appellant with respect to the insufficiency of the evidence as to the amount and value of the services of the plaintiff to the defendant to justify the general verdict of the jury rendered herein, and also as to the creation and ratification of the aforesaid written agreement, we are of the opinion after a careful review of the entire record, and a consideration of the extended comments of counsel thereon, that the evidence in respect of these matters is in such general and substantial conflict that we would not be justified in any attempt to review or overthrow the unanimous verdict of the jury in favor of the plaintiff upon these contested issues; nor to attempt to review or reverse the order of the trial judge who, after hearing all of the evidence which was presented to the jury and all of the objections and arguments urged by the defendant against its sufficiency, denied the defendant's motion for a new trial.

The defendant further contends that the plaintiff herein was not entitled to recover upon his first cause of action for two main reasons, the first of which is that the written agreement upon which the plaintiff predicates his first count or cause of action was not shown to have been executed on behalf of the corporation defendant by anyone having authority so to do.   It is conceded by the respondent that Mr. Dolbeer, the general manager of the defendant, would not have been authorized by the scope of his powers as such to bind the corporation by such an agreement; but the respondent main-

tains that there is sufficient evidence in the record to show that the agreement was after its execution discussed with and made known to and approved by a majority if not all of the directors of said corporation, and that with such knowledge and approval the plaintiff was permitted to proceed with the performance of the services specified therein under such circumstances and for such length of time as to constitute a ratification of the execution and terms of such agreement. Upon these matters of fact the evidence, as we have seen, is in substantial conflict, and hence the finding of the jury in plaintiff's favor thereon will not be disturbed. It is well settled as a matter of law that the agreement of a corporation entered into by its manager without authority sufficiently ample to enable him to execute the same may be approved and ratified so as to become binding upon such corporation through the knowledge, approval, and consent of a majority of the membership of the board of directors acting individually and informally, particularly where, as in this case, the plaintiff has been permitted to continue in the open and active capacity and service of an attorney for the corporation without objection or inquiry as to the existence or terms of his engagement so to do. (*Brown* v. *Crown Gold Milling Co.*, 150 Cal. 376, [89 Pac. 86]; *Scott* v. *Superior Sunset Oil Co.*, 144 Cal. 140, [77 Pac. 817]; *Gribble* v. *Columbus Brewing Co.*, 100 Cal. 67, [34 Pac. 527]; *Goodwin* v. *Central Broadway Building Co.*, 21 Cal. App. 376, [131 Pac. 896]; *Reardon* v. *Richmond Land Co.*, 21 Cal. App. 357, [131 Pac. 894]; *Allen* v. *Central Counties Land Co.*, 21 Cal. App. 164, [131 Pac. 78].)

The second contention of the appellant with respect to the plaintiff's first cause of action is that even conceding the due execution or subsequent ratification of the plaintiff's written contract, he would not be entitled to recover the sum specified on its face as the agreed amount of his compensation, but at most only the reasonable value of his services rendered thereunder, and the appellant urges in support of this contention that since at the time of the execution of said written agreement the relation of attorney and client had already been created between the plaintiff and defendant, the law governing such relation requires that the attorney, standing already in a confidential relation to his client, is bound to the exercise of the utmost good faith in the matter of making a formal

contract for his fees, and hence would be precluded from the recovery of more than a reasonable sum for any services rendered or to be rendered under and by virtue of his written agreement without regard to its attempted fixation of their value.

It would be a sufficient answer to this contention to say that, conceding the law to be as counsel for the appellant asserts it to be, there is sufficient evidence in the record before us to sustain a finding of the jury that the amount of the plaintiff's claim was the reasonable value of his services were it not for the fact that, as the appellant points out, the court in its instruction numbered 2 to the jury seems to lay down a different rule. In that instruction the court stated to the jury that if they should find from the evidence that there was a written contract, whereby the defendant corporation agreed to pay the plaintiff the sum of forty thousand dollars, and if they should also find that the plaintiff fully performed all of the services he was to perform under said written contract, then they need not consider or go into the matter as to whether the plaintiff's services were reasonably worth said or any other sum, but their verdict should be for the full sum provided for in said contract less whatever sums had been paid on account thereof. It is true that the trial court gave this instruction, and it is also true that it is in seeming variance with the equitable rule governing the relations of attorney and client invoked by the appellant as above set forth; but an examination of the cases cited by the appellant's counsel in support of this rule satisfies our minds that the equitable principle it embodies, however sound in the abstract, is not to be given universal application to every agreement made between attorney and client while the relation exists, but only to those agreements where the circumstances under which they are entered into disclose some special reason for its application—as where the written contract provides for greater compensation than was either expressly or impliedly agreed upon prior to the existence of the confidential relation (4 Cyc. 961); or where special relations of confidence exist, or where the client had no other independent legal adviser; or where there was some failure on the part of the attorney to make full disclosure to the client as to the extent of the services required. None of these special conditions requiring an equitable scrutiny of the written contract between plaintiff and defendant herein exists in this case.

The latter was already possessed of other counsel as of a time prior to the inception of the plaintiff's services, and was thus in a position to be fully advised as to their past as well as prospective value. Both of the parties to the contract understood what legal services plaintiff had already performed, and what further services he was to perform in the particular action to which the contract referred. The parties stood in no special confidential relation to each other which would give rise to either opportunity or imputation of any undue influence attending the making of the written agreement as to the amount of plaintiff's fees. It may well, therefore, be questioned whether the abstract principle for which the appellant contends is to be given application to the facts of the case at bar so as to relieve the appellant from compliance with the precise terms of its written contract.

But aside from these considerations, we are satisfied from an examination of the whole body of the trial court's instructions that the jury could not have been misled by any defect in the foregoing instruction, for the reason that the court gave every instruction requested by the defendant, and in so doing fully and repeatedly instructed the jury that the utmost limit of the plaintiff's recovery in this action was the reasonable value of his services. In the light of these repeated admonitions to the jury we cannot say that the alleged defect in the instruction which the appellant especially assails was sufficiently prejudicial to require a reversal of the case.

In addition to this it may be stated that it was a conceded fact in the case that the plaintiff was discharged by the defendant without cause and before the full measure of the services contemplated by the written agreement had been performed. Under these conditions plaintiff would not be required to allege or prove the reasonable value of services which he was not permitted to perform, but would be entitled to count upon his contract; and in this connection we think the trial court correctly instructed the jury that if they should find from the evidence that the plaintiff had been discharged without cause, and thus prevented from the full performance of his agreement, he would be entitled to recover the full amount agreed upon by its terms.

Without undertaking herein to review the entire body of the instructions of the trial court in this case, or to consider in detail the several other criticisms which the appellant aims at them, we will dispose of this branch of the case with our

conclusion that, taken as a whole, the instructions given by the court to the jury were in a remarkable degree full, fair, lucid, and free from confusion, and that we are entirely satisfied that the jury were in no way misled thereby to the appellant's injury.

The appellant makes the further contention that its demurrer to the plaintiff's complaint upon the ground of uncertainty should have been sustained.

There are some uncertainties in the allegations of both counts of said complaint with respect to the specific services performed by the plaintiff which might well have been removed by a further amendment to his complaint; but the record shows that at some time during the pendency of the action the defendant was furnished by plaintiff with a bill of particulars which set forth specifically the services upon which his claim for compensation was based, and which in that respect eked out the uncertainties in his pleading. The items of this bill of particulars were made the subject of exhaustive examination during the trial; and there can be no contention that the defendant was in any way injured by the alleged uncertainties in the plaintiff's original pleading. This being so the objection which is now urged thereto cannot be relied upon for a reversal of this case.

There are a large number of other exceptions and objections to the regularity of the trial of this cause which it would be unprofitable, not to say impossible, to review in detail. It is sufficient to say that in our opinion none of these go to the substantial merits of this controversy, or furnish a sufficient reason for the reversal of this cause upon appeal. The case was fully, fairly, and ably presented before an impartial judge and before a jury called at the defendant's own suggestion, and against the fairness of which no hint of bias or prejudice is urged. This being the case, we have been able to discover no sufficient reason why the verdict of the jury and the judgment and order of the trial court should be disturbed upon appeal.

Judgment and order affirmed.

Lennon, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 28, 1918.