[Civ. No. 23686. Second Dist., Div. Three. Dec. 14, 1959.]

DAVID S. GOLD et al., Respondents, v. RICHARD MAX-
WELL et al., Defendants; DAVID RAKSIN, Appellant.

Abraham Marcus for Appellant.

Morton R. Goodman for Respondents.

VALLÉE, J.—Defendant Raksin appeals from a judgment for plaintiffs in an action on a promissory note dated January 1, 1956, for $3,000, payment of which Raksin guaranteed. Defendant Maxwell did not appear in the action. As a defense, Raksin pleaded fraud in the procurement of the note and the guaranty and a counterclaim.

The court found: 1. Due execution of the note. 2. No part of the principal or interest has been paid, and there is unpaid $3,000 principal and $180 interest. 3. The note was given to plaintiffs by Maxwell as part of the purchase price for shares of stock of Coda Productions, Inc., a California corporation, which shares were then owned by plaintiffs. The shares were delivered by plaintiffs to Maxwell. 4. In connection with the purchase, Maxwell was acting as agent of Raksin. Maxwell was also employed by Coda at the time he was acting as agent for Raksin. 5. As additional consideration to plaintiffs for the stock and their acceptance of the note, Raksin executed in favor of plaintiffs a written guaranty of payment of the note. 6. Raksin admits he refuses to pay the note. 7. Certain exhibits attached to the answer were not part of the transaction between plaintiffs and Raksin.

The court also found: 1. Prior to December 30, 1955, plaintiffs and one Bradford owned all the outstanding stock of

Coda. 2. Bradford was manager of Coda. 3. Prior to December 30, 1955, the owners of the stock desired to sell all or a substantial part of it, and Sunset Music Corporation was desirous of obtaining it. 4. About December, 1955, Sunset was not financially in a position to undertake the purchase. 5. Bradford negotiated for the "purchase and transfer" of 70 per cent of the stock. 6. Bradford was acting on his own behalf. His authority with respect to plaintiffs was limited to obtaining somebody who was interested in purchasing their stock. 7. Bradford in his negotiations with Raksin and Maxwell, did not represent to them that Coda had such a financial status that its accounts receivable exceeded all of its "payables" or that it had gross receipts of $7,000 a month. 8. It is not true that but for the representations of Bradford, Raksin would not have executed the guaranty and would not have entered into the arrangements to purchase the stock. 9. Defendants did not rely on the representations of Bradford to the effect that Coda's accounts receivable exceeded all of its "payables," and that it had gross receipts of $7,000 a month. 10. The representations made by Bradford were not false. 11. After the acquisition of the stock of Coda, Raksin entered into the operation of its business with Maxwell as its general manager pending transfer of part of the stock acquired to Sunset, and undertook various commitments and obligations. 12. Raksin did not learn of the alleged falsity of the representations until about 30 days after the execution of the note and the guaranty. At that time such commitments had not been made as to make it impossible for Raksin to rescind the transaction. Plaintiffs and Bradford were not then notified of the falsity of the representations. 13. About May 4, 1956, Raksin transferred to Sunset Music Corporation 45 per cent of the stock of Coda. 14. Execution of the note was not procured by fraud.

The court concluded: 1. Bradford's representations as to Coda's income were beyond the scope of his authority, and plaintiffs are not bound by them or by an agreement between Raksin and Bradford made December 29, 1955, relative to the purchase by Raksin. 2. Raksin did not reasonably rely on such representations, and was guilty of negligence and carelessness in failing to investigate further the financial condition and income of Coda. 3. Raksin was not induced to enter into the transaction by reason of Bradford's representations but was motivated solely by his desire to assist Sunset in acquiring a controlling interest in Coda. 4. An agreement of May 4, 1956, between Raksin and Sunset affirmed the value of the stock

Raksin purchased December 30, 1955, and his actions after the transaction bar him from asserting his claim of fraud against plaintiffs.[1] (In this agreement Raksin stated he had purchased

---

[1] The agreement of May 4, 1956, between Raksin and Sunset reads:

"Sunset Music Corporation
Suite 1584
6671 Sunset Boulevard
Hollywood 28, California

"Gentlemen:

"This will confirm our understanding with respect to the stock of Coda Productions, Inc.

"I have purchased Seventy Percent (70%) of the outstanding stock of Coda Productions, Inc. and you have purchased Fifteen Per Cent (15%).

"I agree to sell, convey, transfer, and assign to you Forty-Five Per Cent (45%) of the outstanding stock of Coda Productions, Inc. upon the following terms and conditions:

"1. You, as a corporation, agree to indemnify and hold me harmless from any liability, damage, or loss from the undertaking which I assumed upon the purchase of the Seventy Per Cent (70%) interest to pay all the liabilities of Coda Productions, Inc.

"2. You shall pay me Nineteen Hundred Twenty-Eight and 57/100 Dollars ($1,928.57) on or before May 4, 1957, which represents Forty-Five Seventieths (45/70) of the Three Thousand Dollar ($3,000.00) downpayment of the purchase price paid for the Seventy Per Cent (70%) stock interest, and you agree, further, to pay to me an additional sum of Nineteen Hundred Twenty-Eight and 57/100 Dollars ($1,928.57) on or before December 29, 1956, at which time, under the terms of my purchase agreement with respect to the Seventy Per Cent (70%) interest, an additional Three Thousand Dollars ($3,000.00) is payable to the persons from whom I purchased the stock.

"3. You are to attempt to purchase the remaining outstanding stock of Coda Productions, Inc., and if you are able to purchase any or all of the remaining shares of stock, the first stock representing Five Per Cent (5%) of the outstanding stock shall be turned over to me at a price proportionately equivalent to that which I paid for the Seventy Per Cent (70%) stock interest; and any additional stock you may purchase, you may keep for your own account.

"4. You agree that for a period of three (3) years following the date hereof I am to have complete charge of all matters involving artistic policy including artists and repertory of Coda Productions, Inc., and you agree to cause Coda Productions, Inc. to enter into specifically enforceable arrangements for that purpose. The parties agree further to cause Coda Productions, Inc. to provide for pre-emptive rights as to all presently authorized stock.

"If this accurately reflects our understanding, please sign where indicated below.

"Sincerely yours,
David Raksin [signed]
DAVID RAKSIN

"CONFIRMED:
SUNSET MUSIC CORPORATION
By William Bowers [signed]
William Bowers, President"

70 per cent of the outstanding stock of Coda and Sunset had' purchased 15 per cent and that an additional $3,000 was payable to persons from whom he (Raksin) had purchased the stock, Raksin agreed to sell and Sunset agreed to buy 45 per cent of the 70 per cent for $3,857.14, and Sunset agreed to attempt to purchase the remaining stock of Coda.) 5. Plaintiffs are not responsible or liable to Raksin for any losses suffered by him as a result of the transaction or the operation of Coda subsequent thereto.

 In support of his position, defendant makes and variously repeats a number of points which, on analysis, come down to one contention: that the findings are unsupported by the evidence. Such contention requires defendant to demonstrate that there is no substantial evidence to support the challenged findings. (*Nichols* v. *Mitchell*, 32 Cal.2d 598, 600 [197 P.2d 550].) Defendant completely ignores the rule that where an appellant claims the findings, or a particular finding, is not sustained by the evidence, he is required to set forth in his brief all of the material evidence and not merely his own evidence. Defendant recites only evidence favorable to him and argues the case as though we were the judges of the weight of the evidence. It is well established that a reviewing court starts with the presumption that the record contains evidence to sustain every finding of fact. This defendant has not done. If it is not done, the error is deemed waived. (*Cooper* v. *Cooper*, 168 Cal.App.2d 326, 331 [335 P.2d 983].) We do not search the record to find error.

 In *Estate of Good*, 146 Cal.App.2d 704 [304 P.2d 190], we said (p. 706): "We have had occasion to remark before in a similar situation that a claim of insufficiency of the evidence to justify findings, consisting of mere assertion without a fair statement of the evidence, is entitled to no consideration, when it is apparent, as it is here, that a substantial amount of evidence was received on behalf of the respondents. Instead of a fair and sincere effort to show that the trial court was wrong, appellant's brief is a mere challenge to respondents to prove that the court was right. And it is an attempt to place upon the court the burden of discovering without assistance from appellant any weakness in the arguments of the respondents. An appellant is not permitted to evade or shift his responsibility in this manner. [Citation.] And upon more than one occasion we have called attention to our statement to the same effect in *Goldring* v. *Goldring*, 94 Cal.App.2d 643, 645 [211 P.2d 342], and we have

said we must either abide by our former statements or tolerate practices which are contrary to first principles of appellate procedure and which place undue burdens upon the court."

Notwithstanding defendant's flagrant violation of the rules, we have examined the record. It would serve no purpose to recite the ramifications of the transaction. Suffice it to say that from our examination of the record we are satisfied the evidence supports the court's vital findings. There was evidence which supports the finding that Bradford's sole function was to find a buyer for the stock. Assuming, as defendant contends, that Bradford made the false representations to Raksin to the effect that Coda's accounts receivable exceeded its "payables" and that it had gross receipts of $7,000 a month, and that the finding to the contrary is unsupported, the judgment is sustained by the other findings to the effect that defendant would have signed a guaranty in any event and that he was not induced to do so by any misrepresentations of Bradford, which findings are supported by the evidence.

The presumption is against fraud; it approximates in strength that of innocence of crime. (23 Cal.Jur.2d 182, § 73.) The presumption will support a finding in accordance with it even in the face of contrary evidence. (18 Cal.Jur.2d 490, § 67.) Further, fraud must be proved by clear and convincing evidence; and it is the function of the trial court, not the reviewing court, to determine whether that standard has been met.

We are compelled to comment on the form of the findings. They are in large part by reference to the allegations of the pleadings, such as "Each and all of the allegations of the complaint are true," or "The allegations of paragraph —— of the answer are untrue," or "The allegations of paragraph —— of the counterclaim are untrue except. . . ." The allegations referred to are in many instances in the conjunctive. The result of the form used is confusing and time consuming. It requires "painstaking study and comparison." (*Greenberg v. Rose*, 172 Cal.App.2d 532, 535 [342 P.2d 522].) We have wasted hours deciphering the findings. We hope, perhaps in vain, that compelling strict adherence to the 1959 amendment to section 632 of the Code of Civil Procedure will remedy this way of preparing findings.[2] In one finding the

[2]Section 632, as amended in 1959, in pertinent part reads: "In superior courts and municipal courts, upon the trial of a question of fact by the court, its decision must be given in writing and filed with the clerk within

court found that Bradford did not make any misrepresentation. This finding was manifestly an inadvertence. It is apparent when the findings and conclusions are read together and as a whole that the court intended to find that Bradford did make the misrepresentations that Coda's receivables exceeded its ''payables'' and that it had a gross income of $7,000 a month. Since, as stated earlier, the court found that Raksin did not rely on the misrepresentations and was not induced to enter into the transaction by reason of them, we have ignored the obvious mistake.

We find no reversible error.

■ The note guaranteed by defendant contains this provision: ''in case suit is instituted to collect this note or any portion thereof, I promise to pay such additional sum as the Court may adjudge reasonable as Attorney's fees in said suit.'' This provision embraces an allowance for legal services rendered on appeal as well as during the trial. (*Dankert* v. *Lamb Finance Co.*, 146 Cal.App.2d 499, 503-504 [304 P.2d 199].) Plaintiffs are therefore entitled to have attorney's fees on appeal.

The judgment is affirmed and defendant-appellant is directed to pay plaintiffs-respondents attorney's fees on this appeal in the sum of $250.

Shinn, P. J., and Ford, J., concurred.

---

30 days after the cause is submitted for decision. In giving the decision, the facts found and the conclusions of law must be separately stated. *The statement of facts found shall fairly disclose the court's determination of all issues of fact in the case.*''