[Civ. No. 19603. First Dist., Div. One. Jan. 25, 1962.]

DIANE FIVEY, Plaintiff and Respondent, v. GEORGE CHAMBERS, Defendant and Appellant.

458

John M. McKenna and George Olshausen for Defendant and Appellant.

Charles W. Decker for Plaintiff and Respondent.

SULLIVAN, J.—In this action brought by an attorney's assignee to recover for legal services rendered and costs disbursed pursuant to a contingent fee contract, defendant appeals from a judgment, after a nonjury trial, in favor of plaintiff in the sum of $2,582.01, representing the total of $2,166.66 as an attorney fee and $415.35 as costs.

The complaint is in two counts: the first, on the written contingent fee contract involved, and the second, in *quantum meruit*. Both counts are on the same transaction and for the same amount of money. The defendant in his answer admits entering into the fee contract but denies any liability under either cause of action.

The record discloses the following facts: The defendant herein suffered personal injuries as the result of being struck by an automobile operated by one Kelly. To prosecute his claim against Kelly, he employed the law firm of which plaintiff's assignor Allan Brotsky was a member. Such employment was pursuant to a written contingent fee contract entered into between the defendant and the law firm on April 1, 1958. According to this contract, the defendant agreed to pay the attorney 33⅓ per cent of all amounts recovered by compromise or judgment and to reimburse the attorneys for all

costs advanced by them. The above attorney fee was to be computed after first deducting the costs. Mr. Brotsky proceeded to handle defendant's claim, notified Kelly's insurance carrier, and on May 14, 1958, filed the complaint in the action of *Chambers* v. *Kelly*.[1]

The ensuing relationship was not without friction. Defendant insisted early in the case that settlement negotiations be entered into with Kelly's insurance carrier. He asked other persons what his case was worth; included among such persons were two members of the county clerk's staff. In September 1958 he called at the office of Attorney Everett Berberian to seek the same information and was told by Mr. Berberian to consult his own attorney. He then attempted to have Mr. Berberian become his attorney, complaining that there was undue delay[2] and that he had received no settlement of his claim. After having attempted to get an advance of money from Mr. Brotsky, he made the same request of Mr. Berberian. He was refused by both attorneys who told him that such an advance would be unethical. Some discussions then followed among defendant and the two attorneys to effect a satisfactory arrangement under which Mr. Berberian would be substituted as counsel for Chambers and Mr. Brotsky would be assured compensation for services rendered. Finally, defendant decided to keep Mr. Brotsky as his attorney.

In December 1958, counsel for Kelly made an offer of settlement in the sum of $6,500 which was discussed with Chambers by Mr. Brotsky. With the approval of Chambers, Brotsky made a counter-offer of $7,150. Shortly thereafter, counsel for Kelly again communicated with Mr. Brotsky to advise that he had acquired information that Chambers had been convicted of a felony, that Chambers had made some misrepresentations concerning his family situation, and that, as a consequence, he would not be able to keep open much longer the above-mentioned settlement offer of $6,500.

---

[1] Mr. Brotsky's law firm assigned and transferred to him all its rights and duties under the above fee contract, on January 1, 1959, upon his withdrawal from the firm. He later acquired new associates and with this defendant's approval, arranged with one of them, Edward Stern, to act as trial counsel in the case of *Chambers* v. *Kelly*.

[2] This charge finds no support in the county clerk's file in *Chambers* v. *Kelly*. On July 11, 1958, Kelly, after having obtained orders extending time to plead, filed his answer to Chambers' complaint. On July 18, 1958, Mr. Brotsky filed a demurrer to, and motion to strike, an affirmative defense in the answer. On July 29, 1958, such demurrer was sustained. On August 18, 1958, Mr. Brotsky filed his memorandum to set for trial and on January 29, 1959, a notice of motion to advance cause for trial.

By this time, Mr. Brotsky had become associated with a new law firm and had referred the file in *Chambers* v. *Kelly* to Mr. Edward Stern for attention and, if necessary, for preparation for trial. A conference was held on February 28, 1959, at Mr. Brotsky's office, attended by Brotsky, Stern and the defendant. The defendant was told of the call from the counsel for Kelly. Mr. Stern recommended to the defendant the acceptance of the $6,500 settlement offer. At the same time he made it plain that the decision was the defendant's and that he, Stern, was ready to try the case, in the event the defendant found the offer unacceptable. Mr. Stern reviewed with the defendant a number of reasons entering into his above recommendation: the failure of investigation to disclose any eyewitness to the automobile accident involved; the fact that defendant had been convicted of a felony; certain conduct of the defendant pertaining to his panhandling activities including one occasion when he panhandled counsel for Kelly; the defendant's use of aliases without satisfactory explanation. Mr. Brotsky also recommended acceptance of the offer. He apparently had encountered difficulty in discussing a settlement of the case with his client, because the defendant was unable to make up his mind whether to settle or not.

At the above office conference, Mr. Stern then told the defendant that after reviewing his file, he felt there were three alternatives open to Chambers: (1) accept the $6,500 offer, (2) refuse such offer and go to trial, (3) if Chambers was uncertain as to whether the offer was a reasonable one, and wished an independent opinion, petition the superior court for the appointment of a conservator to advise Chambers whether or not to accept the offer.[3]

Mr. Brotsky testified that during the course of the conference, he stated to Chambers: "And I said, 'George, I told you that I think it is a good offer, and I think Mr. Stern's reasons I concur in completely.' I said further, 'As I have already said to you, if you have any doubt about this, we can have you petition for the appointment of a conservator, who will then examine the facts and make his mind up and advise you as to whether this is a proper settlement or not.' His answer was, 'That won't be necessary. I don't want to do that. Mr. Stern has convinced me—you have convinced me; I want this settlement. Now, how soon can we get the money?' "

---

[3]This was a reference to division 5 of the Probate Code (Prob. Code, § 1701 et seq.) added to said code by Stats. 1957, ch. 1902, § 1.

Mr. Brotsky then telephoned counsel for Kelly and made arrangements to have the settlement draft delivered to him the following week.

On the day following the above-mentioned conference, Mr. Brotsky received a letter from the defendant discharging him as attorney. Subsequently, and by order of court, Attorney John McKenna was substituted as attorney for Chambers in the case of *Chambers* v. *Kelly*. The case was then tried before a jury which returned a verdict for the defendant Kelly. A motion for new trial was granted. In a second nonjury trial, judgment was rendered in favor of Chambers in the sum of $11,056.80; this was later settled and satisfied upon payment of $10,500.

In addition, there was evidence at the trial of the instant case that Mr. Brotsky had expended at least 100 hours of work on the case of *Chambers* v. *Kelly* before he was discharged on February 28, 1959. Counsel for the defendant conceded that $30 was a fair hourly charge for such services. The respondent's case below consisted of the testimony of four witnesses including that of Attorney John McKenna,[4] who was called under the provisions of section 2055 of the Code of Civil Procedure, and certain documentary evidence. The appellant presented no witnesses in defense and so far as we can ascertain, did not appear personally at the trial. The only documentary evidence introduced by appellant was the county clerk's file in *Chambers* v. *Kelly* which was examined and considered by the trial court and which is also before us.

The trial court found that the above contingent fee contract had been entered into and thereafter assigned; that pursuant thereto Mr. Brotsky had commenced the action of *Chambers* v. *Kelly,* and "thereafter . . . faithfully and diligently prosecuted said cause and competently performed the services required of him by said contract"; that immediately prior to February 28, 1959, the defendant had advised Brotsky to accept the $6,500 settlement offer; that on February 28, 1959, "without good or sufficient cause or justification therefor," the defendant discharged Brotsky "in breach of said contract" and rejected said settlement offer; that Mr. McKenna

---

[4]Mr. McKenna who tried this case below, intervened herein by leave of court, along with Attorney George Olshausen as assignees of the judgment in favor of Chambers in *Chambers* v. *Kelly.* Their first amended complaint in intervention alleges the assignment of the judgment, that this plaintiff's claim is for part of said judgment; and that such claim is not legally enforceable because Mr. Brotsky breached his contingent fee contract.

was ordered substituted as counsel for the defendant; that on December 30, 1959, the defendant received the sum of $10,500 in full satisfaction of the judgment rendered in his favor in *Chambers* v. *Kelly*; that at the time of his wrongful discharge, Mr. Brotsky had performed more than 100 hours of professional services and incurred costs in the sum of $415.35; that at no time did Mr. Brotsky or Mr. Stern "misrepresent the law to Chambers, or coerce Chambers into accepting the settlement offer of $6,500, or give Chambers misleading, inaccurate or improper advice"; that both counsel had made clear to Chambers their willingness to try his case; that Brotsky had proposed to Chambers that the latter "petition for the appointment of a conservator solely to give Chambers additional assurance, if Chambers so desired," that the above offer was in his best interests but that "Chambers stated that he understood the purpose of the proposal, but that he did not need such assurance, and agreed to accept the settlement offer of $6,500.00"; that Brotsky did not attempt to coerce Chambers into a settlement, and Chambers did not believe he would be forced to accept the settlement by a petition filed in the Probate Court for the appointment of a conservator, and that no such petition was filed; that the damages suffered by Mr. Brotsky was the sum of $2,582.01, being one-third of the rejected $6,500 settlement offer or $2,166.66 together with $415.35 as costs; and that the reasonable value of his legal services was not less than $2,166.66. Judgment was rendered accordingly.

Defendant's contentions on appeal are that: (1) Mr. Brotsky gave the defendant bad legal advice with regard to the appointment of a conservator, for which reason defendant could discharge Brotsky without liability for attorney fees; (2) even if Brotsky's advice was not clearly erroneous, defendant having reasonable cause to believe that the conservatorship was being misrepresented to him and thus to lose confidence in Brotsky, where one of two parties must suffer— the client in paying double fees or the attorney in receiving none—the loss should fall on the attorney as the party having superior knowledge; and (3) the trial court used an incorrect measure of damages. We have concluded that none of the foregoing contentions are tenable and that the judgment should be affirmed.

It is a well and long-established principle that a client may discharge his attorney at any time, with or without cause, unless the attorney has a vested interest in the subject-

matter of the litigation or as it is frequently denominated, a "power coupled with an interest." (Code Civ. Proc., § 284; *O'Connell* v. *Superior Court*, 2 Cal.2d 418, 421-425 [41 P.2d 334, 97 A.L.R. 918]; *Echlin* v. *Superior Court*, 13 Cal.2d 368, 372 [90 P.2d 63, 124 A.L.R. 719]; *Kirk* v. *Culley*, 202 Cal. 501, 505 [261 P. 994]; *Todd* v. *Superior Court*, 181 Cal. 406, 413-420 [184 P. 684, 7 A.L.R. 938]; *Gage* v. *Atwater*, 136 Cal. 170 [68 P. 581]; *Hendricks* v. *Sefton*, 180 Cal.App.2d 526, 532 [4 Cal.Rptr. 218]; *Bergan* v. *Badham*, 142 Cal.App.2d Supp. 855, 857 [297 P.2d 815].) However, liability is incurred by the client where the discharge is wrongful.

 It is well settled that where the attorney is wrongfully discharged before he has completely performed his contract, he may recover from the client damages for such breach, the measure of damages being the fee specified in the contract, or recover on a *quantum meruit* for the reasonable value of his services. This is true whether the attorney's contract is for a fixed or noncontingent fee, or is a contract where the amount of the fee, the liability therefor, or both, are contingent. (*Contract price*: *Oliver* v. *Campbell*, 43 Cal.2d 298, 302-307 [273 P.2d 15] (fixed fee); *Jones* v. *Martin*, 41 Cal.2d 23, 27 [256 P.2d 905] (contingent fee); *Denio* v. *City of Huntington Beach*, 22 Cal.2d 580, 591 [140 P.2d 392, 149 A.L.R. 320] (contingent fee); *Bartlett* v. *Odd Fellows Savings Bank*, 79 Cal. 218, 222 [21 P. 743, 12 Am.St.Rep. 139] (contingent fee); *Webb* v. *Trescony*, 76 Cal. 621, 622-623 [18 P. 796] (fixed fee);[5] *Baldwin* v. *Bennett*, 4 Cal. 392, 393-394 (fixed fee); *Hendricks* v. *Sefton, supra*, 180 Cal.App.2d 526, 533 (contingent fee); *Jones* v. *Brown*, 84 Cal.App.2d 390, 393 [190 P.2d 956] (contingent fee); *Countryman* v. *California Trona Co.*, 35 Cal.App. 728, 736 [170 P. 1069] (fixed fee). *Reasonable value*: *Kirk* v. *Culley, supra*, 202 Cal. 501 (contingent fee); *Elconin* v. *Yalen*, 208 Cal. 546 [282 P. 791] (contingent fee); *Neblett* v. *Getty*, 20 Cal.App.2d 65, 69-70 [66 P.2d 473]; *Green* v. *Sherritt*, 17 Cal.App.2d 732 [62 P.2d 769] (contingent fee); *Lessing* v. *Gibbons*, 6 Cal.App.2d 598,

---

[5]In the concurring opinion of Chief Justice Gibson in *Salopek* v. *Schoemann*, 20 Cal.2d 150, 156 [124 P.2d 21], also concurred in by Justice Traynor, it is urged that the compensation of an attorney employed under a contingent fee contract should be measured by the reasonable value of the services performed, not by the fee fixed in the contract and that *Webb* v. *Trescony, supra*, and *Zurich Gen. Acc. & Liab. Ins. Co., Ltd.* v. *Kinsler, infra*, should be overruled. The same two justices urge the same proposition in their dissenting opinion in *Denio* v. *City of Huntington Beach, supra*.

607 [45 P.2d 258] (contingent fee); *McCully* v. *Gano*, 116 Cal.App. 695, 698-699 [3 P.2d 348] (contingent fee); *Ayres* v. *Lipschutz*, 68 Cal.App. 134 [228 P. 720] (contingent fee). See generally 6 Cal.Jur.2d, Attorneys at Law, § 196, p. 397; § 197, p. 399; 7 C.J.S., Attorney and Client, § 169, p. 1027; 54 A.L.R.2d 604 et seq.)

Whether the attorney's discharge has been without cause and therefore wrongful depends upon the particular circumstances of each case. ■ As stated in *Zurich Gen. Acc. & Liab. Ins. Co., Ltd.* v. *Kinsler*, 12 Cal.2d 98, 101-102 [81 P.2d 913] : "the question whether 'cause' for the abrogation of such a contract exists or has existed may be one of fact; and it also should be clear that in connection with the facts which may be established, a legal question as to their sufficiency is more than likely to ensue. That is to say, that a conclusion with reference to the ultimate question of fact necessarily must rest upon substantial and sound reasons therefor, and not be made to depend upon mere whim, caprice, or arbitrary judgment. It is apparent that to judicially declare, without limitation, that for 'cause' a covenant of contingent compensation to be paid to an attorney may be broken with impunity and without consequent pecuniary liability, in itself is so broad, elastic and so lacking in desirable precision, that if unrestrained and unrestricted would be but to open the door to the perpetration of fraud. The 'cause' must be not only 'good,' but it also must be legally sufficient."

Defendant argues that Mr. Brotsky gave him completely erroneous advice as to the conservatorship and that by virtue of this alone, defendant had good cause to discharge Mr. Brotsky. The defendant makes no specific claim that the findings to the contrary are without evidentiary support. Indeed such a claim would present real difficulties for defendant upon this record which shows no evidence offered by him in defense or explanation except the county clerk's file. There is no conflict in the record. Defendant cannot close his eyes to the findings. ■ As is stated in *Davis* v. *Lucas*, 180 Cal.App.2d 407, 409 [4 Cal.Rptr. 479] : "The appellate court starts with the presumption that the evidence sustains each finding of fact (*Gold* v. *Maxwell*, 176 Cal.App.2d 213, 217 [1 Cal.Rptr. 226] ; *Cooper* v. *Cooper*, 168 Cal.App.2d 326, 331 [335 P.2d 983] ), and the burden rests upon appellant 'to demonstrate that there is no substantial evidence to support the challenged findings.' (*Nichols* v. *Mitchell*, 32 Cal.2d 598, 600 [197 P.2d 550] ; see also *New* v. *New*, 148 Cal.App.2d 372,

383 [306 P.2d 987]; *Cooper* v. *Cooper, supra,* at page 331, and *Gold* v. *Maxwell, supra,* at p. 217.)'' Defendant's argument would be more appropriately addressed to the trier of fact. It is unnecessary to make but brief reference to the authorities defining our proper function of review. (*Primm* v. *Primm,* 46 Cal.2d 690 [299 P.2d 231]; *Grainger* v. *Antoyan,* 48 Cal.2d 805 [313 P.2d 848]; *Crawford* v. *Southern Pacific Co.,* 3 Cal. 2d 427 [45 P.2d 183]; *Estate of Bristol,* 23 Cal.2d 221 [143 P.2d 689].) The proper question for our determination is whether the trial court's findings that Mr. Brotsky faithfully, diligently and competently performed his duties but was discharged without cause, considered with the findings relating to the conservatorship, are supported by the evidence. We think they are.

The trial court found that Mr. Brotsky proposed to the defendant that he petition for the appointment of a conservator solely to give himself additional assurance, if he so desired, that the $6,500 settlement offer was in his best interest. The court further found that the defendant, before he wrongfully discharged Brotsky, stated that he understood the purpose of the proposal but did not need such assurance and agreed to accept the settlement. No claim is, or could be, made by the defendant that said findings are without evidentiary support in the record. The evidence in the record is clear that the defendant was convinced that the settlement was a good one, accepted it and wanted to know how soon he could get the money. The trial court found that the defendant did not believe he would be forced to accept the settlement in the Probate Court and that at no time did Mr. Brotsky threaten to seek the appointment of a conservator against the will of the defendant or mention the conservatorship as a means of coercing the defendant. These findings, too, are amply supported.

Findings of fact must be liberally construed and are to be resolved in favor of upholding rather than defeating the judgment. (*Johndrow* v. *Thomas,* 31 Cal.2d 202, 207 [187 P.2d 681]; *Woodbine* v. *Van Horn,* 29 Cal.2d 95 [173 P.2d 17]; 48 Cal.Jur.2d, § 314, p. 317.) We think that it is clear that the court in effect found that Brotsky's proposal on the conservatorship had nothing to do with his discharge by the defendant and was not relied upon by the defendant as the reason for such discharge. In the light of such findings, whether or not Brotsky's proposal on the conservatorship was good or bad, accurate or erroneous, is in our opinion imma-

terial. On this record, such proposal was merely an isolated incident of attorney's conference with a client. It was not a decision determining their future handling of the litigation. No conservatorship was ever sought. The chief purpose of the conference was to evaluate defendant's negligence and make a recommendation to him. The trial court found, and we think rightly, that this was done faithfully, diligently and competently.

What we have just said is not altered by the separate finding of the trial court that Brotsky and Stern did not misrepresent the law to Chambers or give him misleading, inaccurate or improper advice. Whether viewed as a finding or, as appellant argues, a conclusion, the proposal on the conservatorship was, as we have shown, immaterial.

Defendant relies on *Salopek* v. *Schoemann,* 20 Cal.2d 150 [124 P.2d 21], *Moore* v. *Fellner,* 50 Cal.2d 330 [325 P.2d 857], and *Moser* v. *Western Harness Racing Assn.,* 89 Cal. App.2d 1 [200 P.2d 7]. He cites these cases in support of his argument that since Brotsky gave Chambers completely erroneous advice, Chambers had the right to discharge him without liability for any attorney fees. Defendant thus assumes, in face of this record and without questioning the sufficiency of the evidence, that Brotsky's discharge was with cause. As we have shown, the record abundantly supports the findings that there was no legally sufficient cause to discharge Brotsky. The above cases, therefore, do not assist defendant. Under the respective particular facts of each case, it was found that there had been legally sufficient cause for discharging the attorney. (*Zurich Gen. Acc. & Liab. Ins. Co., Ltd.* v. *Kinsler, supra,* 12 Cal.2d 98.)

We next consider defendant's second contention on appeal. In outline this proceeds as follows: (a) even if the proposal for a conservatorship was not clearly erroneous, nevertheless, it gave defendant reasonable cause to believe that the conservatorship was being misrepresented to him and (b) to lose confidence in Mr. Brotsky and (c) defendant had the right to discharge Brotsky and (d) as a consequence where one of them must suffer—the defendant in paying double fees and Brotsky in receiving none—the loss should fall on Brotsky as the person having superior knowledge. The first three steps of the argument are gratuitous assumptions contrary to the findings and the record before us. The net effect of these three steps is a basic assumption that Brotsky's discharge was for cause. This cannot prevail against the findings of the trial court, sup-

ported by the evidence, that the discharge was without legally sufficient cause.

Defendant cites no authority for his concluding proposition that the risk of loss must fall on the attorney. Such is not the law, as we have shown above. (See collection of cases, *supra.*) ▮ The short answer on this point is that when the client wrongfully discharges his attorney he must take the risk of loss. He cannot escape the resultant legal liability to the attorney whom he wrongfully discharges; he also accepts the additional expense of the new attorney, whom he employs. If this means a double expense to the client, it is a result of his own improper act.

▮ Finally, defendant complains that the trial court used an incorrect measure of damages. The trial court ordered judgment for 33⅓ per cent of the settlement offer of $6,500, or the sum of $2,166.66. This, together with the sum of $415.35 for costs, makes up the total judgment of $2,582.01. Under the authorities which we have set forth above, since Mr. Brotsky was discharged without cause, he was entitled to recover according to the terms of the contract, 33⅓ per cent of the sum of $10,500 eventually obtained by the defendant. ▮ Defendant cannot complain of the lesser judgment when the correct measure of damages on the contract would have resulted in a larger judgment against him. (See *Estate of Raphael,* 103 Cal.App.2d 792, 798 [230 P.2d 436].)[6]

The judgment is affirmed.

Bray, P. J., and Tobriner, J., concurred.

A petition for a rehearing was denied February 14, 1962, and appellant's petition for a hearing by the Supreme Court was denied March 21, 1962.

---

[6]It is to be noted that under the findings the above amount is not unreasonable. The trial court also found that the reasonable value of the services rendered was not less than $2,166.66. This finding was proper without expert testimony. (*Kirk* v. *Culley, supra,* 202 Cal. 501, 508-510; *Elconin* v. *Yalen, supra,* 208 Cal. 546, 549-550.) It finds ample support in the record. A judgment on the *quantum meruit* count would have had full support on the record.