KNOLL and another, Plaintiffs and Respondents, v. KLATT and wife, Defendants: RASMUSSEN, Intervenor and Appellant.*

*No. 60. Argued June 2, 1969.—Decided June 27, 1969.*
(Also reported in 168 N. W. 2d 555.)

* Motion for rehearing denied, with costs, on September 8, 1969.

268

For the appellant there was a brief by *Williams, Meyer & Williams* of Oshkosh, and oral argument by *Thomas S. Williams.*

For the respondents there was a brief and oral argument by *William L. McCusker* of Madison.

HEFFERNAN, J. Attorney McCusker, attorney for respondents, was awarded the sum of $1,000, plus dis-

bursements, for his services, and the appellant, Attorney Rasmussen, was awarded $1,795.64.

No objection is made by respondents or their attorney to the fees set by the county judge, even though the fee under the contract with Rasmussen was limited to one quarter in the event of settlement without suit. Here the amount withheld for attorneys' fees was one third of the settlement figure of $8,500. Accordingly, we are not confronted with any question other than the propriety of the allocation of the fees. No claim is before this court that the contract was invalid in its entirety or that Rasmussen was entitled to no fees. Inasmuch as the respondents do not ask for a review of the portion of the order awarding fees to Attorney Rasmussen, the trial court specifically ruled that the question of whether Rasmussen had been discharged for cause was not a consideration in its decision. Therefore, the only question is whether the trial court erred in awarding Attorney Rasmussen $1,795.64 when he had not been discharged for cause.

In *Tonn v. Reuter* (1959), 6 Wis. 2d 498, 95 N. W. 2d 261, this court enunciated the standard applicable in the instant case:

"The majority rule is that, where the attorney has been employed to perform specific legal services, his discharge, without cause or fault on his part before he has fully performed the work he was employed to do, constitutes a breach of his contract of employment and makes the client liable to respond in damages. . . . The majority rule commends itself to this court and we adopt the same." (P. 503.)

"It seems to us that the proper measure of damages to apply in a case like the present is the amount of the contingent fee based upon the amount of the settlement or judgment ultimately realized by the client, less a fair allowance for the services and expenses which would necessarily have been expended by the discharged attorney in performing the balance of the contract. However, any deduction for services yet to be performed in order

to earn the contingent fee should not be made on the basis of deducting such fraction of the contingent fee as equals the fraction of the total work not performed at the time of discharge." (P. 505.)

Under the terms which Rasmussen insists are fair and required by the *Tonn Case*, Rasmussen would be entitled to one fourth of $8,500, the settlement figure, or $2,125 less the fair value of services which would have had to be performed in completing the contract. McCusker, who completed the settlement of the claim, showed time charges and disbursements of $1,806.10. True, some of his time and effort was devoted to adjusting the controversy between his clients and Rasmussen, but a portion of his time was expended in completing the settlement.

The amount received by Rasmussen was only $329 less than if he had received his entire contract fee based on one fourth of the $8,500 settlement. Thus, although the much greater time charges of McCusker, which appear to be reasonable, in completing the settlement, could have been deducted from the amount due Rasmussen, the court in its discretion chose to deduct less and gave him a far larger amount. The record shows no objection to this fee allocation by McCusker or his clients, and under the applicable law Rasmussen has no cause for objection.

The determination of the trial judge to have McCusker withhold one third of the settlement proceeds as a fund for allocating the fees to be paid Rasmussen and McCusker is not before the court. It does appear, however, that, on the basis of this allocation, the sum paid to Rasmussen is to be $1,795.64 and to McCusker $1,000 plus disbursements of $37.70. We see no evidence that the trial court abused his discretion in allocating one third of the settlement for fees, and none of the parties hereto contends that the trial judge abused his discretion in that respect.

It should also be noted that the work of each attorney was reviewed at a hearing, and, in addition, the trial judge was personally familiar with the litigation involved. We have previously stated that a trial judge, who is a lawyer, may determine the value of legal services on the basis of his own knowledge and experience, subject to review by the justices of this court, who have the same professional expert knowledge. *Will of Gudde* (1951), 260 Wis. 79, 86, 49 N. W. 2d 906.

We pointed out in the *Estate of Marotz* (1953), 263 Wis. 99, 103, 56 N. W. 2d 856, that a trial judge's determination of attorney fees would be sustained "unless such allowance is clearly unreasonable . . . [and] against the great weight and clear preponderance of the evidence." The appellant has not sustained that burden on this review.

We should point out also that, at one time during the presettlement negotiations, Rasmussen apparently claimed the right to veto his clients' settlement of the case, and, in fact, at one point insisted that his fee be computed not on the sum collected, but on the gross amount owed. Fortunately, Rasmussen makes no such claims at the present time. We should point out, however, that we have, in the recent case of *Goldman v. Home Mut. Ins. Co.* (1964), 22 Wis. 2d 334, 341, 126 N. W. 2d 1, held that, "The claim belongs to the client and not the attorney; the client has the right to compromise or even abandon his claim if he sees fit to do so." That opinion makes it clear that an attorney may enforce his contractual attorney's lien when a case is settled without regard to his rights under a contract with a client, either under the terms of sec. 256.36, Stats., or by a common law action. It is equally clear from that opinion that he cannot, by any contractual arrangement, stand in the way of his client's desire to compromise a case. We, of course, do not deal here with the provisions of sec. 256.38 which

require the consent of the attorney (or order of the court) for the settlement of a personal-injury or wrongful-death case, *after the action has been brought* and in which the attorney has appeared.

*By the Court.*—Order affirmed.

BEILFUSS, J., took no part.