606 P.2d 90

Martin ANDERSON and Bernice Boyer, Plaintiffs,

v.

George GAILEY, Defendant.

Jeff STOKER, Petitioner-Appellant,

v.

James ANNEST, Defendant-Respondent.

No. 12863.

Supreme Court of Idaho.

Feb. 6, 1980.

Jeff Stoker, Twin Falls, for petitioner-appellant.

James Annest, Burley, for defendant-respondent.

BAKES, Justice.

This appeal concerns the right of the appellant Stoker, an attorney, to a portion of the contingent fee provided for in respondent Annest's attorney fee contract with his clients who discharged respondent without cause and retained appellant, who negotiated a settlement of the case. The district court awarded the respondent the entire contingent fee. We reverse and remand.

In May of 1973 Bernice Boyer and Martin Anderson retained respondent James Annest to represent them in an action for the wrongful death of their son, Richard Anderson. Under the terms of their agreement with Mr. Annest, Annest's fee was contingent on recovery. The contract provided, *inter alia*, that Annest would be entitled to 40% of the total sum recovered, excluding costs, if the recovery followed an appeal. After Annest was retained the defendant in the action offered to settle for $15,000, which Annest's clients rejected. A later offer by the defendants to settle for $10,000 was also rejected by the clients. The case then proceeded to trial. During the trial the defendants offered to settle for $17,500. Plaintiffs Anderson and Boyer apparently believed that one of the defendants had insurance coverage of $100,000, and they insisted that Annest not accept any settlement less than $100,000. Annest made their position known to the defense attorney and rejected the settlement offer of $17,500.

A jury verdict was returned in favor of the defendants, but on appeal that verdict was reversed by this Court. *See Anderson v. Gailey*, 97 Idaho 813, 555 P.2d 144 (1976). Following the reversal, the defendants again offered to settle for $10,000. Annest

communicated this offer to his clients and they instructed him to reject it. Annest then began to prepare for another trial. Before a second trial was held, however, the clients discharged Annest for the stated reason that "very little progress [had] been made in this case in over three years." For the purpose of this proceeding, Stoker has agreed, however, that the discharge was without cause. Appellant Stoker, who was later substituted in place of Annest as counsel, negotiated a settlement of $25,000. The entire $25,000 was paid into the registry of the court.

Stoker then filed a "motion for division of attorney fees" and respondent Annest responded with a "motion for order to pay in accordance with contract." A hearing was held on these motions at which Annest and Stoker both waived any procedural rights to a separate action and agreed that the issue be decided by the district court at that time. At that hearing appellant Stoker explained to the district court that "the contract that I had with the client was basically whatever fee was obtained under Mr. Annest's contract would be divided by the court in accordance with what we submitted here; in line with the cases I have been able to find . . . . I would request the right to submit a short brief . . dealing with . . . whether the court has the right to divide the 40% fee or should Mr. Annest get the whole thing." Appellant Stoker argued that because respondent Annest was discharged prior to full performance, he was not entitled to the full 40% provided for in the contingent fee contract and that appellant Stoker was entitled to that portion to which Annest was not entitled. Following the hearing and after the submission of authorities in support of their positions, the district court in a memorandum opinion ruled in favor of Annest for the full 40% provided for in the contingent fee contract, i. e., $9,236.67.[1] By order

---

1. As the sole authority for its conclusion, the district court quoted the following statement from 6 Cal.Jur.2d:

"An attorney employed under a contingent fee contract to perform certain services, but discharged by the client without cause before the completion of said services, does not

dated January 6, 1978, the court ordered the $9,236.67 fee portion of the deposit held in the registry of the court to be paid to Annest and "the balance of the settlement proceeds held by the clerk . . ." to be paid ". . . over to Mr. Stoker, in trust on behalf of his clients." Stoker appeals to this Court from that January 6, 1978, order.

■ Even though respondent Annest stipulated to the procedure before the district court in determining the adverse claim of Stoker to the attorney fee portion of the settlement proceeds in the court's registry, on appeal respondent Annest strenuously challenges the right of Stoker to pursue this appeal, contending that "Stoker has no standing to maintain the appeal and is not a real party in interest." However, this Court has ruled to the contrary in the recent case of *James v. Dunlap*, 100 Idaho 697, 604 P.2d 711 (1979), wherein this Court stated, at page 713:

> "Concomitant with the contention just disposed of, respondents argue that appellants were not parties in the court below in the juvenile proceeding. This is true, but appellants were very much parties in the ensuing compensation proceeding and certainly they were aggrieved by the order holding them not so entitled. *Renfro v. Nixon*, 55 Idaho 532, 45 P.2d 595 (1935), is ample authority for the proposition that in this jurisdiction an attorney in quest of his fee may be an aggrieved party entitled to appeal."

The *James* case is dispositive of respondent's contention that the appeal should be dismissed.

The main issue raised by appellant which we now address concerns the right of a client to dismiss without cause his attorney with whom he has executed a contingent fee contract, and the measure of damages, i. e., the amount of attorney fees, that that attorney is entitled to recover for the breach by the client of the contingent fee contract resulting from such a wrongful dismissal. The appellant urges us to follow the recent California decision of *Fracasse v. Brent*, 6 Cal.3d 784, 100 Cal.Rptr. 385, 494 P.2d 9 (1972), which held that the remedy of a wrongfully discharged attorney is limited to recovery in *quantum meruit* of the value of the services rendered up to the time of discharge and that the attorney is not entitled to sue for damages for the client's breach of the contingent fee contract. Although several jurisdictions have followed *Fracasse* in this respect, *see e. g., Covington v. Rhodes*, 38 N.C.App. 61, 247 S.E.2d 305 (1978); *Heinzman v. Fine, Fine Legum & Fine*, 217 Va. 958, 234 S.E.2d 282 (1977), we see no reason why the respondent should be denied the right to recover damages for breach of contract, and we decline the appellant's invitation to adopt the California rule. However, since this issue is before the Court for the first time, an analysis of the California court's opinion in *Fracasse* provides a useful framework for delineating the reasons for the rule which we adopt today.

Prior to *Fracasse*, California courts had consistently held that an attorney employed

---

thereby lose such rights against the client as he would have had upon completion of the contemplated services. He is generally entitled to the same amount of compensation and under the same contingency as if he had completed the services contemplated. He therefore may recover the full amount of the contingent fee agreed upon, even though the success contemplated as the contingency was brought about by another attorney whom the client had substituted. If this means a double expense to the client, it is a result of his own improper act. . . . Even where the attorney would be entitled to sue for the contingent fee agreed upon, he has the option to sue instead for the reasonable value of his services rendered prior to the unjustified dis-

charge by the client." 6 Cal.Jur.2d, Attorneys at Law, § 119.

However, the law as expressed in the foregoing quotation from Cal.Jur.2d was no longer the law in California at the time of the Court's decision herein, as a result of the decision of the California Supreme Court in *Fracasse v. Brent*, 6 Cal.3d 784, 100 Cal.Rptr. 385, 494 P.2d 9 (1972), discussed later herein. 7 Cal.Jur.3d, § 260, p. 592, now follows in the rule in *Fracasse v. Brent, supra*, and supercedes the statement in 6 Cal.Jur.2d, § 119, which followed the cases prior to *Fracasse*, and particularly the early decision of *Baldwin v. Bennett*, 4 Cal. 392 (1854), which was expressly overruled in the *Fracasse* case.

under a contingent fee contract and subsequently discharged without cause was entitled to recover the full amount of the contingent fee agreed upon regardless of the amount of work he had put into the case and even though the success contemplated as the contingency was brought about by another attorney whom the client had substituted. *See Denio v. City of Huntington Beach,* 22 Cal.2d 580, 140 P.2d 392 (1943); *Zurich Gen. Accident & Liab. Ins. Co., v. Kinsler,* 12 Cal.2d 98, 81 P.2d 913 (1938). While this rule could often result in a double expense to the client, the California courts did not consider that an inappropriate burden for the client to bear since that additional expense was the result of the client's own improper act in discharging his counsel. *See Fivey v. Chambers,* 199 Cal. App.2d 457, 19 Cal.Rptr. 111 (1962).

This rule derived from an early California case, *Baldwin v. Bennett,* 4 Cal. 392 (1854). In *Baldwin* the client had engaged the services of an attorney to represent him for a contingent fee. However, the client, without the advice or knowledge of the attorney, settled the claim. The attorney then brought an action to recover his fee, which the client opposed contending that the attorney was entitled to recover only what his services were worth, without regard to the contract. The California court ruled:

> "The general rule as to measure of damages in an action for breach of contract, is correctly given by appellant's counsel. It 'is not the whole price agreed to be paid, but the actual loss sustained, which will consist of the value of the services rendered and the damage sustained by the refusal to allow performance of the rest of the contract.'
>
> "To this rule there are, however, some exceptions. Where, from the nature of the contract, (as in this case,) no possible mode is left of ascertaining the damage, we will have presented the anomalous case of a wrong without a remedy, unless

we adopt the only measure of damages which remains, and that is, the price agreed to be paid." 4 Cal. at 393.

The California court in *Fracasse* criticized the *Baldwin* decision and the rule it had sired on two grounds. First, the court noted that *Baldwin* was based on the "faulty premise" that the damages suffered by a wrongfully discharged attorney were not ascertainable and concluded that there was "no convincing reason why recovery on a *quantum meruit* theory would not fairly and adequately compensate the attorney for his services . . .." 100 Cal.Rptr. at 388, 494 P.2d at 12. The court then noted that because of the unique relationship between an attorney and his client the client must have the absolute right to dissolve that relationship whenever the client ceases to have confidence in the integrity, judgment or capacity of the attorney. The court concluded that the *Baldwin* rule, which imposed on the client the burden of paying the full contingent fee to the discharged attorney, unduly restricted that right. The court ruled that a client's discharge of his attorney, with or without cause, "does not constitute a breach of contract for the reason that it is a basic term of the contract, implied by law into it by reason of the special relationship between the contracting parties, that the client may terminate that contract at will." 100 Cal. Rptr. at 389, 494 P.2d at 13. Accordingly, the California court ruled that a wrongfully discharged attorney had no action for breach of his contingent fee contract but that his remedy was limited to recovery in *quantum meruit.*

We agree with the California court that the *Baldwin* rule was founded on a faulty premise and produced intolerable results. It may be difficult to accurately assess the actual damages suffered by an attorney because of a client's breach of a contingent fee contract.[2] However, in breach of con-

---

2. Like *Baldwin* and *Fracasse,* the case at bar does not present the more difficult problem of determining the actual loss suffered by an attorney employed under a contingent fee contract but discharged without cause where the

contingency has not yet occurred. In *Baldwin* and the instant case the contingency had occurred before the action to recover on the contract was brought. In *Fracasse* the court ruled that the discharged attorney was not entitled to

tract cases the courts are often called upon to fix and award damages in situations where those damages are difficult to measure.[3] But the difficulty of the task does not warrant the abandonment of the duty; rather, it requires the particularly careful use of judicial judgment and discretion. See *Smith v. Daniels*, 93 Idaho 716, 471 P.2d 571 (1970); *Conley v. Amalgamated Sugar Co.*, 74 Idaho 416, 263 P.2d 705 (1953). As a comment to the Restatement on Contracts observed:

> "The various difficulties involved in [awarding compensatory damages for breach of contract] frequently make it impractical to attain its purpose with any near approach to exactness. . . .
> These [rules concerning such awards] are to be regarded by the court as guides in the estimation of damages to be recovered. Their application requires the use of more judicial discretion than is usually the case." Restatement of Contracts § 329, comment a (1932).

The courts are capable of determining the value of an attorney's time and services with sufficient exactness for purposes of awarding damages both for breach of contract and for determining the amount of any setoff, whether by way of *quantum meruit* or otherwise.

We agree with the California court in *Fracasse* that the rule in *Baldwin* placed an intolerable burden on the client's right to discharge his attorney and seek new counsel. Under the rule in *Baldwin* a client who engaged counsel on a contingent fee basis and thereafter discharged that attorney without cause and retained new counsel would nevertheless be obligated to pay the first attorney the full contingent fee despite the fact that the first attorney did not perform all the services necessary to secure settlement or payment of the claim and despite the fact that the discharge relieved the attorney of his duty to devote time and energy to the client's case and thereby en-

abled him to profitably use that time elsewhere. See e. g., *Jones v. Brown*, 84 Cal. App.2d 390, 190 P.2d 956 (1948) (client required to pay attorney a 33⅓% contingent fee even though substituted counsel had already been paid a 40% contingent fee). The *Baldwin* rule penalized clients for breaching the contract while treating attorneys as a privileged class by guaranteeing them their full fee if they were wrongfully discharged, regardless of what their actual damage may have been because of the breach.

Although we agree with the California court's criticisms of the *Baldwin* rule, we do not agree that those criticisms require the rather extreme rule adopted by the court in *Fracasse*. In our view, the defects in the *Baldwin* rule are best remedied by applying the general rules of contract law which the *Baldwin* court recognized but thought to be too difficult to apply. The court in *Baldwin* recognized that under general principles of contract law the attorney was not entitled to "the whole price agreed to be paid" but was only entitled to recover "the actual loss sustained," 4 Cal. at 393. However, that court did not apply this rule because it thought there was "no possible mode . . left . . . to ascertain the exact damage suffered by the wrongfully discharged attorney" and that "unless we adopt the only measure of damages which remains, and that is, the price agreed to be paid" that "we will have presented the anomalous case of a wrong without a remedy . . .." 4 Cal. at 393.

However, in Idaho this Court has consistently ruled that "in actions for breach of contract . . . only such damages will be allowed as fairly compensate the injured party for his loss." *O. A. Olin Co. v. Lambach*, 35 Idaho 767, 772, 209 P. 277, 278 (1922); see *Nelson v. Hazel*, 91 Idaho 850, 433 P.2d 120 (1967); *Carey v. Lafferty*, 59 Idaho 578, 86 P.2d 168 (1938);

bring an action for recovery in *quantum meruit* until the contingency had occurred.

**3.** The most difficult of contract damages pales when compared to the much more difficult and uncertain determination of tort damages, *i. e.*, pain and suffering, mental anguish, outrage, injury to reputation, heart balm, etc.

*Jensen v. Wooters*, 56 Idaho 595, 57 P.2d 340 (1936). As we stated in *King v. Beatrice Foods Co.*, 89 Idaho 52, 402 P.2d 966 (1965):

> "[A]s a general proposition . . . the purpose or objective of the court is to place the injured party . . . in the position no better and no worse than he would have occupied had the contract been performed." 89 Idaho at 58–59, 402 P.2d at 969, *quoted in Industrial Leasing Corp. v. Thomason*, 96 Idaho 574, 577, 532 P.2d 916, 919 (1974); *Young Electric Sign Co. v. Capps*, 94 Idaho 518, 522, 492 P.2d 57, 61 (1971).

We have long held in Idaho that the purpose of awarding damages for breach of contract is to fully recompense the non-breaching party for its losses sustained because of the breach, not to punish the breaching party. Application of this principle of course requires that the court in fixing damages account for the savings which inure to the non-breaching party because he is relieved of his duty to perform by the breach. As we stated in *Young Electric Sign Co. v. Capps, supra* :

> " '[T]he defendant's non-performance . . . saves the plaintiff from the labor or expense of wholly or partly performing on his own part, . . . in order to settle finally the rights of both parties in a single action, the court deducts this savings made by the plaintiff from the value of the performance which the defendant should have made.' " 94 Idaho at 522, 492 P.2d at 61, *quoting* 11 Williston on Contracts, § 1339 (3d ed. 1968).

In the context of a breach of a contract for personal services, this rule entitles the wrongfully discharged employee or agent to recover the contract price diminished by the expenses saved and by the amount he received or could have earned from other suitable employment available because of his discharge. *See* Restatement of Agency

(Second) § 455, comment d (1958); 11 Williston on Contracts, § 1358 (3d ed. 1968); 5 Corbin on Contracts, § 1095 (1964); D. Dobbs, Handbook on the Law of Remedies, § 12.25 (1973). The discharged employee has a duty to mitigate his losses. This rule applies whether the employee's agreed compensation is a fixed sum or contingent on results accomplished, 11 Williston, *supra* at 301, and has been applied to wrongfully discharged attorneys on contingent fee contracts. *See Knoll v. Klatt*, 43 Wis.2d 265, 168 N.W.2d 555 (1969); *Tonn v. Reuter*, 6 Wis.2d 498, 95 N.W.2d 261 (1959); *Berry v. Nichols*, 227 Ark. 297, 298 S.W.2d 40 (1957); 5 Corbin on Contracts, *supra* at 520–521 (discussing the *Tonn* decision); S. Speiser, Attorneys' Fees §§ 4.34–.35 (1973); *see also* Restatement (Second) of Agency, § 449, comments b & d (1958). *Cf. Buckalew v. City of Grangeville*, 100 Idaho 460, 600 P.2d 136 (1979) (a public officer wrongfully discharged has no duty to mitigate damages).

We are mindful that the client must be free to retain counsel whom he trusts and in whom he has confidence and to discharge an attorney with whom he is dissatisfied. But we do not believe that these interests and considerations preclude the application of basic principles of contract law. The dissent in *Fracasse* appropriately observed that:

> "Although [attorney-client] contracts are subject to the usual precepts governing persons standing in a confidential relationship, no statute, decision or rule of professional conduct has declared that they are not subject to general contract law. No authority has ever so jettisoned respected contract principles to decree, as do the majority today, that a solemn, valid agreement between attorney and client may be dissolved into thin air at the mere whim of the client." 100 Cal. Rptr. at 393, 494 P.2d at 17.

The client, just as any other contracting party, is free to breach the contract and discharge the attorney.[4] Except in unique

---

4. We note, however, that the attorney, because of his professional position, does not have the same freedom to withdraw from representation of the client. *See* ABA Code of Professional Responsibility, EC 2–32 (1976); Idaho Code of Professional Responsibility; DR 2–110 (1978); I.R.C.P. 11(b).

situations, contract law is not designed to compel a contracting party to continue with a contract with which it is dissatisfied. Rather, contract law only assures that the non-breaching party receives the benefit of the contract. While the client who discharges an attorney without cause would be liable to the attorney for breach of contract, the liability of the client should be limited to the fee specified in the contract diminished by the savings in time and effort to the attorney resulting from discharge. Unlike the situation resulting from the rule in *Baldwin*, the client should not be forced to pay to both the discharged attorney and a substituted attorney a full contingent fee. Likewise, the discharged attorney should not reap the windfall of receiving a full fee for only part performance.

Although the client is only liable for the attorney's actual losses and not necessarily the full contract fee, a client who discharges one attorney and hires another will nevertheless usually pay more in attorney fees than if he had only retained the services of one attorney. The services performed by the second attorney will generally be somewhat duplicative of services already performed by the first attorney, and those duplicated services ordinarily would be reflected both in the first attorney's recovery and in the fees charged by the second attorney.[5] In this sense the client's freedom to discharge an attorney is burdened. However, it is not inappropriate for the client to bear this burden where he has discharged his first attorney without cause. In sum, an application of general principles of contract law in this type of case will not generally result in the imposition of a significantly greater burden on the client than that which results from a recovery in *quantum meruit* under the California court's rule in *Fracasse*.

We conclude that a proper application of the general principles of contract law best remedies the evils pointed out by the California court in *Fracasse*, and yet does so without engaging in the dubious practice of finding "implied in law" terms in the contingent fee contract and without stripping the attorney entirely of his right to rely on the contingent fee contract and to sue for its breach.[6] The California court's decision in *Fracasse*, as the dissent in that case noted, reduced "an attorney-client contract to a hollow and meaningless act" and to an agreement that "may be dissolved into thin air at the mere whim of the client." 100 Cal.Rptr. at 393–394, 494 P.2d at 17–18. In our view an attorney-client contract is still a contract, and either the attorney or the client is entitled to sue for damages for its breach.

█ The trial court in this case properly concluded that Annest was entitled to recover on his contingent fee contract but erred in awarding Annest the entire fee and not just Annest's actual losses. We therefore remand the case for further proceedings. On remand the court is to consider the expenses saved Annest because he was not required to complete performance under the contract, *see Berry v. Nichols, supra,* and to consider the value to Annest of being relieved of his obligation to continue to perform services and expend further time in the representation of the clients. *See Tonn v. Reuter, supra.* In making these determinations on remand the court may properly look to the services performed by Stoker, the substituted counsel, as an indication of the services which remained to be performed under the contract and which Annest was no longer obligated to perform.

5. This problem is not presented in this case, however, as the record indicates that Stoker agreed with the clients Anderson and Boyer that his fee would be the difference between the full contingent fee provided for in Annest's contract and the amount Annest was actually entitled to recover.

6. In his motion to the district court, the respondent sought payment of his fee based on the contract. He did not seek, alternatively, recovery in *quantum meruit*. Hence, we need not decide here whether an attorney may elect between damages for breach of contract and recovery in *quantum meruit* or whether recovery in *quantum meruit*, if permitted, may exceed the fee provided by the contract. *See Chambliss, Bahner & Crawford v. Luther*, 531 S.W.2d 108 (Tenn.Ct.App.1975); *Howell v. Kelly*, 534 S.W.2d 737 (Tex.Civ.App.1976).

In doing so, however, the court on remand is also to be cognizant of the fact that some of the services performed by the substituted counsel, Stoker, were necessarily duplicative of services already performed by Annest, and Annest's recovery on the contract should not be reduced by the value of those services.

Stoker's attorney fees, of course, are based on his particular agreement with the clients. The record suggests that under his agreement with the clients he was to receive that portion of the 40% contingent fee to which Annest was not entitled. If this is the case, on remand the district court is to award to Stoker the difference between Annest's actual damages for the client's breach of the contract and the fee provided by the contract.

Reversed and remanded. Costs are awarded to appellant. No attorney fees.

DONALDSON, C. J., and SCOGGIN, J. pro tem., concur.

BISTLINE, Justice, dissenting.

*Fracasse,* and all of the other cases cited as authority in the Court's opinion, evolved from lawyer-client fee disputes. Such is not the case here. Here there is no dispute, if it be understood that a dispute is a controversy which arises from some sort of relationship. Annest and Stoker had *no* relationship.

We do have a controversy, one which in my opinion should not have found its way into the court system. The controversy arose when attorney Stoker undertook representation of clients who had theretofore been represented by attorney Annest. The controversy involves only the two attorneys, and I write primarily to lay to rest the suggestion found in the Court's opinion that the Court's justification for today's opinion is the necessity of settling a fee dispute between Mr. Annest and his former clients. I also point out that the Court, in its zeal to reach out and make some law, where there is no need for so doing, entertains an appeal which should have been either dismissed out of hand as unappealable, or summarily affirmed.

The litigating parties in the wrongful death action reached a settlement over two years ago, and are no longer in court either in the district court or in this Court. The plaintiffs and the defendants in the wrongful death action are no longer lawing with each other, nor does either have any controversy with Mr. Stoker or Mr. Annest. The appeal record shows a stipulation for dismissal and order of dismissal dated the 22nd day of December, 1977, and on that date $25,000 was paid into the district court registry.[1]

Ten days prior to that dismissal of the action Stoker therein filed a unique motion, entitled Motion for Division of Attorney Fees, requesting

1. The $25,000 fund was paid into the court registry, apparently by agreement and under the provisions of I.C. § 10–1115 in order that Annest would file a satisfaction of his lien against the proceeds. Annest filed such a satisfaction on January 16, 1978. Even though the main action had gone to judgment, satisfied by payment of $25,000 by the Gaileys, the $25,000 was in the court's possession, and the court certainly had the requisite authority to conduct a hearing in order to give some direction to the clerk of the court for disbursing it. The court ordered that, other than costs, 40% be paid to Annest on his contractual fee arrangement and 60% to the plaintiffs.

Annest in this Court moved that the appeal be dismissed. Although that motion should be granted, a majority of the Court are not so agreed, and, without addressing the issue, the majority proceeds to find error in Judge Cunningham's decision. Accordingly it behooves me to extend more consideration to the merits than to the motion. I submit that case law generally would not allow the appeal. *See Christian v. Cotten,* 1 Ariz.App. 421, 403 P.2d 825 (1965); *Wylie Brothers Contracting Co. v. Albuquerque-Bernalillo County Air Quality Control Bd.,* 80 N.M. 633, 459 P.2d 159 (1969); *Ogle v. Ogle,* 517 P.2d 797 (Okl.1973); *Temple v. Feeney,* 7 Wash.App. 345, 499 P.2d 1272 (1972); Anno., 91 A.L.R.2d 618 (1963). *See also Common School Dist. No. 58 v. Lunden,* 71 Idaho 486, 233 P.2d 806 (1951); *French v. Christner,* 173 Or. 158, 135 P.2d 464 (1943). A reading of our recent decision in *James v. Dunlap,* 100 Idaho 697, 604 P.2d 711 (1979), will show a readily observed distinction between that case and this.

"an order dividing the attorneys fees between James Annest and Jeff Stoker. A request is made for a hearing in front of the court where evidence can be presented in regard to an equitable division of the attorney fees in the above-entitled matter."

The action was dismissed, as aforesaid, after which Annest moved that 40% of the settlement amount on deposit with the court be delivered to him.

At the ensuing hearing before Judge Cunningham, which was also after dismissal of the action, Stoker stipulated into the record: that the controversy between the parties to the then dismissed law suit, *Anderson-Boyer v. Gailey*, had been settled prior to his actual substitution as counsel of record; that the money that was deposited with the court was the amount agreed upon between the plaintiffs and the defense counsel in the settlement of the case.

At oral argument we learned that the plaintiffs, whose action stands long ago dismissed, have no pecuniary interest in the outcome of the appeal. We were informed that the plaintiffs have never challenged their fee arrangement with Annest, that they have received back their advanced costs off the top of the $25,000, and have received their 60% share of the $23,091.68 remaining after costs were repaid. We were told that there is absolutely no problem in this case of those plaintiffs being asked or required to pay any fee over and above the Annest contract fee of 40%. We were told by Mr. Stoker that his arrangement with the plaintiffs was that *he would charge them no fee* and that he would look to Annest for his fee. The plaintiffs in this action are as out of it as is the defendant, and the plaintiffs, though named as appellants on this appeal, have no interest in the outcome of this appeal; nor does the defendant.

The appellant's brief states that an issue presented is:

"IF AN ATTORNEY, IN A CONTINGENT FEE CASE, IS DISCHARGED WITHOUT CAUSE, IS HE ENTITLED TO THE FULL CONTINGENT FEE UPON SETTLEMENT OF THE CASE OR TO A FEE BASED UPON QUANTUM MERUIT?"

But factually there was no such dispute between the wrongful death plaintiffs and Mr. Annest. The issue presented to Judge Cunningham, correctly decided by him and erroneously decided here, is: Where an attorney is discharged without cause, and his clients do not challenge his right to compensation as per their contract, and another attorney supplants the former on an agreement with them that he will charge them nothing, and look instead to his compensation from the former attorney, does he have any legal claim against the former attorney—the latter being no party to such agreement or understanding? Judge Cunningham answered that question in the negative. Nor do I see anything in the Court's opinion which points to any error on his part. The reversal comes only from the Court indulging itself in the belief that some remedy should be fashioned on behalf of Stoker and against Annest—but doing so in a manner which creates the illusion that the Court's decision is in favor of the client.

I emphasize that there was no issue between the plaintiffs and Annest. It was not the plaintiffs who asked Judge Cunningham to relegate Annest to a fee based on *quantum meruit.* It was Stoker; he candidly states in his brief that he "made a motion to the court to have the court divide the attorney fees, asking the court to determine what portion Mr. Annest should receive and what portion Mr. Stoker should receive." Annest, however, had no fee dispute with his former clients. Nor did he have any agreement with Stoker. Nor does it appear that Stoker obtained Annest's consent to take over the representation of Annest's clients. Nor does it appear that Annest desired such action on Stoker's part or encouraged it.

Stoker's motion was exactly as he portrayed it, a request of the court to award him some portion of Annest's 40% fee. Stoker did not in his unique pleading make the least suggestion that application of California principles of law entitled *the plain-*

*tiffs* to breach their contract without cause and pay Annest off on a *quantum meruit* basis. In fact, *had* Stoker on behalf of Anderson-Boyer sought and succeeded in gaining Judge Cunningham's approval to paying Annest on a *quantum meruit* basis, the records before us in this case and the prior appeal of the parties litigant show that the plaintiffs might indeed have been caused to pay far more than the 40% contingency fee which had been agreed upon.

At the hearing before Judge Cunningham, Stoker placed plaintiff Anderson on the stand. His only testimony had to do with costs advanced and his recollection of settlement offers which had been made and turned down. The other plaintiff, Mrs. Boyer, was called, testifying only to offers received. Stoker put attorney Paine on the stand. Paine had been defense counsel for Gailey. A summary of his testimony is simply his opinion that the settlement figure arrived at with Stoker would not have been reached had he negotiated with Annest. He gave no testimony as to the amount of damages a jury might have awarded for the wrongful death. He contended steadfastly that before the first trial he had offered $10,000.00, and on the third day of the trial offered $25,000.00—which offers were rejected. He was not asked to give an opinion of the value of services rendered by Annest prior to his discharge.

Annest in turn established by the testimony of attorney Lloyd Jackson Webb, after a review of the file, that the 40% fee would be grossly less than what would have been charged for time on a *quantum meruit* basis. Stoker, however, notwithstanding that he here asserts a *quantum meruit* as the fee which a wrongfully discharged attorney should earn, made no showing whatever on *behalf of the plaintiffs* Anderson-Boyer as to what Annest should have been compensated on a *quantum meruit* basis. Rather, Stoker sought a piece of Annest's undisputed contract fee. No pleading whatever challenged the validity of the contract, or its fairness. Nothing whatever was offered to rebut attorney Webb's testimony that payment of the contract fee was a better deal for the plaintiffs than a *quan-*

*tum meruit* payment would have been. Stoker essentially sought a *quantum meruit* recovery for himself, but at the expense of Annest.

The only understanding which can reasonably be gathered from Stoker's remarks at the conclusion of the hearing was that he was not urging anything on behalf of the plaintiffs, but that, on behalf of himself, standing pat on Annest's 40% contract, he wanted the court to take it from Annest and divide it—in a manner Stoker thought equitable. In order to obtain the full flavor of Stoker's unique contention, it is necessary to include pertinent remarks made at the close of the hearing before Judge Cunningham:

"MR. STOKER: Your Honor, an annotation setting forth the law dealing with the several employment of attorneys, found at 73 A.L.R.2d 1011, the section of that annotation that deals with this question, basically it sets forth the rule of a number of lawyers who are severally employed, all on one side of a controversy, and in a few such cases it was recognized that the fees should be determined on a quantum meruit basis. I went through several of the cases that dealt with this question, *Jaslo versus United States* [D.C. N.Y.] 308 Federal Supplement, Page 1164, a 1970 case, the Court said the attorneys' fees should be determined considering all the circumstances of the case, and that case looked at the ultimate payment of damages plus the amount of time involved in the case.

"In this situation I think the fair determination as the division of these attorneys' fees should be based on the relative value of services rendered. Although I think time should be a factor, still I think the primary question and consideration for this Court should be based upon the value of the services rendered. Mr. Paine, who was the defense attorney, in his dealings with Mr. Annest, he was unable to get the case settled, and, in fact, at the time of appeal being returned against him, in Mr. Annest's favor, he offered $17,500 final settlement to settle

the case, that's what Mr. Annest had earned, I submit at that point in time he had 40 per cent of that amount coming as a result of his efforts if the defense attorney was willing to concede $17,000 in settlement of the case.

"Your Honor, my involvement moved that amount up to $25,000, and we were able to settle the case in accordance with the clients' wishes. On that basis I think regardless of the amount that—there is some controversy over the amount that was actually offered because if we take Mr. Annest's amount of $10,000, and I think the amount that we have increased the offer substantially more, nevertheless giving him the benefit of the doubt. I think that we should figure $17,500 instead of $25,000, and I think this is a factor to be taken into consideration by the Court. Mr. Annest could have gone back to trial, and if the Court will review the transcript, this would be a very difficult one to win. Also the fact that he tried it once and lost it, I think are factors all to be taken into consideration. We were subsequently able to settle it decently and the circumstances have been presented to the Court I should be entitled to 40 per cent of that portion of the fee attributable to the amount between $17,500 and $25,000 which was the final settlement.

"MR. ANNEST: Your Honor, I'm going to leave it up to the Court. I thought that Mr. Stoker had indicated to the Court that he was going to stand on the contract. I agree it was a difficult case, and I think that we did a terrific amount of work, and I think that we did the best we could do for Mr. and Mrs. Boyer and Mr. Anderson . . .

. . . . .

"MR. STOKER: Your Honor, in response to the contract, standing on the contract, if we take the literal terms of that contract, 40 per cent of what was recovered, and in Mr. Annest's case it was nothing.

"Your Honor, I think that there has to be a fair and equitable meeting arrived at in regard to attorney fees, because I am certainly not going to say that Mr. Annest is not deserving of something because of his efforts, he put a great deal of time, but I think the value of the services I put in justifies the proposition that I have submitted to the Court, and I think that the law will back me in the fact where a situation, an attorney doesn't finish a case he doesn't get anything, although this is not quite a point with this particular situation, still the extention of that contract's language could be taken for that, because the Court is aware a client has the absolute right to terminate the attorney-client relationship at any time, and on this basis we submit it to the Court and ask the Court to decide it.

"THE COURT: Well, gentlemen, it does appear to me that what I'm called upon to do in these proceedings is to determine how much Mr. Annest should receive as attorney fees under the employment contract between him and his clients. I'm not here to make any—I shouldn't think I would be here to make a decision, it seems to me, Mr. Stoker, you're entitled to whatever fee your contract is with your client. I don't know what that contract is, and I'm not trying to butt in and find out, but I think it would be unfair to you for me to make some contract up and say that your client owes you this. I don't know what your agreement or contract with your client is, I think the only issue here is the interpretation of the contract between Mr. Anderson, Mrs. Boyer and Mr. Annest.

"You give a citation and I want to look at it, but I certainly don't follow how I can interpret whatever agreement you and your clients have. That seems to be preposterous that I should be voiding some contract between you and your clients; that's between you and your clients, not between—this isn't a situation in which I'm advancing attorneys' fees which were due under—or where I'm making a determination of reasonable attorney fees under a foreclosure contract. I assume that you, Mr. Stoker, have got

some contract with your clients, and that's not before me. I would not think it would be before me. What are your views?

"MR. STOKER: Well, Your Honor, as I understand the law in a situation where there is a contingent fee contract and the first attorney is terminated as here, that contract is not necessarily binding on the division of the fees from that point on.

"THE COURT: I don't know that it is either. I'm talking about your contract, not Mr. Annest's contract.

"MR. STOKER: Your Honor, the contract that I had with the clients was basically whatever fee was obtained under Mr. Annest's contract would be divided by the Court in accordance with what we submitted here; in line with the cases I have been able to find, if it's down to that question, I would request the right to submit a short brief to the Court dealing with that very subject, and whether the Court has the right to divide the 40 per cent fee or Mr. Annest should get the whole thing."

Judge Cunningham's memorandum opinion showed his awareness of Stoker's novel request:

"Counsel has cited the annotation appearing in 73 ALR 2nd 991. That annotation deals with

"' * * * the question of division of fees or compensation between co-operating attorneys united in the performance of legal services without having any express contract as to the proportionate share or exact amount of the fee which each shall receive.'

"But that annotation hardly covers the present situation. We are not here dealing with a dispute between co-operating attorneys united in the performance of legal services and engaged in a dispute between themselves as to how they shall split a fee jointly earned between them.

*I do not know of any agreement, either expressed or implied, between Mr. Annest and Mr. Stoker for a division of attorney fees earned under Exhibit A.*" (Emphasis added)

The manner in which Judge Cunningham is supposed to have erred in his decision totally escapes me. The plaintiffs Anderson-Boyer have never challenged their contractual arrangement with Annest. Yet the Court hands down an opinion which, seizing upon Stoker's attempt to move in on Annest's fees, intermeddles with long-settled law and so unsettles it as to make it wholly incomprehensible. An attorney's contingent fee arrangement bears *no* similarity to the leasing of farm equipment or electric neon signs. In whatever clothing, contingent fee arrangements have long and well served the purpose of gaining legal representation for those who might otherwise have no representation. Ignoring this, and ignoring that the law has long been that the nonbreaching attorney is entitled to his contingent fee (or, at *his* option, payment for his services on a *quantum meruit* basis), the Court comes down with a holding which will put both the contingent fee client and the contingent fee attorney to litigation where must be proved *the damages* for the other's breach.

Well settled principles of law have this day been needlessly unsettled. The law is left in a muddle. This was not the case, nor the time, nor the circumstances for the Court's intermeddling in the field of contingent fee contracts.

DUNLAP, J., Pro Tem. concurs.